IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALDERA PHARMACEUTICALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 11 C 7259 |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; LOS ALAMOS NATIONAL SECURITY, LLC; and DOES 1 through 50, | ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

In September 2005, plaintiff Caldera Pharmaceuticals, Inc. ("Caldera") entered into a patent licensing agreement ("License Agreement") with the Regents of the University of California ("Regents"), which later assigned the License Agreement to defendant Los Alamos National Security LLC ("LANS"). Currently before me is Caldera's motion to remand. For all the reasons that follow, that motion is granted.

Caldera alleges that the License Agreement granted Caldera an exclusive license to multiple patent rights related to technology, apparatuses and methods for detecting binding using micro x-ray fluorescence. On or around April 25, 2006, the Regents assigned the License Agreement, and all of the rights, duties and obligations associated with it, to LANS.

Prior to executing the License Agreement, Caldera relied upon multiple representations that defendants were the lawful owners of the subject patent rights. However, according to Caldera, defendants did not own the rights that were sold to Caldera pursuant to the License Agreement, a fact that Caldera did not discover until it had invested millions of dollars in the technology, and paid defendants millions of dollars in fees, royalties and equity payments for these exclusive rights. Further, as a result, Caldera was unable to consummate certain lucrative contractual relationships, one of which was valued by defendants at over $600 million. In addition, defendants have worked with Caldera's competitors to improperly utilize and profit from the technology that was exclusively licensed to Caldera.

This case was filed in state court in the Circuit Court of Cook County. Caldera explains that it filed this action "in order to preserve its cause of action against The Regents, which historically have taken great advantage of its Eleventh Amendment immunity in federal court." Mem. at 1. Shortly thereafter, LANS removed this case to federal court. The Regents communicated to LANS that it refused to join the removal. Caldera now seeks remand based both on procedural and subject matter jurisdiction grounds. I address each in

turn.

**Procedural Arguments**

Caldera argues that removal was procedurally improper because the Regents did not join in the removal. LANS responds by arguing that Caldera's argument is untimely, as Caldera waited more than 30 days to raise this argument. In reply, Caldera maintains that I should exercise estoppel and order remand on procedural grounds.

Motions for remand, based on procedural grounds, must be filed within thirty days of removal. 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than subject matter jurisdiction must be made within 30 days after the filing of the notice of removal."). The 30-day time limit for motions to remand is strictly enforced to prevent "shuttling of cases between state and federal court" and "extended litigation that does no more than determine where litigation shall proceed." *In the Matter of Continental Casualty Co.*, 29 F.3d 292, 295 (7th Cir. 1994).

Here, LANS filed its Notice of Removal on October 13, 2011, setting November 12, 2011 as the deadline to file a motion to remand. Caldera, however, did not file its motion until February 3, 2012. Caldera argues that, in the interim, there was a "confused slew of subsequent motions." In

addition to a motion to dismiss, LANS filed a motion to stay this action pending a decision from the California Court of Appeals. Judge Norgle, who presided over the case at that time, set a briefing schedule on the motion to stay. On November 11, 2011, one day before the remand deadline, the parties stipulated to a stay pending a ruling on LANS' motion to stay. LANS' motion to stay was thereafter denied on December 22, 2011. This decision terminated the effect of the parties' stipulation. Thus, Caldera's motion to remand was due one day later, on December 23, 2011. Caldera waited another 42 days to file its motion.

In the interim, on November 29, 2011, LANS filed a motion to disqualify Caldera's counsel. In addition, the Regents also filed a motion to dismiss. Caldera asserts that on December 12, 2011, while appearing for the Regents' presentment of its motion to dismiss, counsel for Caldera was told by a clerk of the court that the court did not wish to address substantive motions until after the disqualification issue was resolved.

Recognizing that it did not meet the 30-day time limitation, Caldera argues that the critical date for purposes of § 1447 is not the date of the filing of the motion, but rather the date that Caldera "communicated" its objections to

4

the removal to the court and LANS. Caldera argues that it should be permitted to seek remand because it alerted the defendants and the court that it *intended* to seek remand. Caldera points to various statements it made in documents (its 11/7/11 opposition to LANS' motion to reassign, the parties' 11/11/11 stipulation, and two December 2011 letters to defendants' counsel) that it intended to seek remand. In addition, on December 20, 2011, Caldera filed a "Statement" with the court in response to the Regents' presentment of its motion to dismiss. Caldera's main argument in the "Statement" was that the parties had agreed to a stay pending the court's ruling on LANS' motion to stay (related to the California Appellate Court's opinion), and that the Regents were violating that stipulation by seeking a briefing schedule on its motion to dismiss. Caldera went on to request that the court set a briefing schedule for Caldera's motion to remand.

I am not convinced by Caldera's reliance on *Northern California District Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir. 1995). In that case, the party filed a timely motion to remand, but raised a new argument in its reply brief. The court held that the argument raised in reply was not timely because it was raised after the 30-day deadline had passed. That case does not

support Caldera's novel position here that they should be deemed to have met the 30-day deadline because they indicated a desire to remand prior to the expiration of the deadline. The only way for a party to properly preserve its right to seek remand is to actually file a motion for remand. Here, Caldera had until December 23, 2011 to do so. When Caldera did not receive a response from the court to its request in the December 20, 2011 "Statement," Caldera should have simply filed its motion for remand at that time.

Finally, I reject Caldera's assertion that equitable tolling is appropriate here. I have reviewed the cases cited by Caldera, none of which are from this circuit, and find them quite distinguishable from the facts here. Most of the cases cited by Caldera involve scenarios where a party timely filed a motion to remand, but had trouble with the court's internal computer docketing system. In those cases, the court deemed the motion filed on the day the party attempted to file the motion, even though the motion was not docketed until shortly thereafter. Caldera has not put forward any cases which support the exercise of equitable tolling here.[1]

---

[1] I likewise reject Caldera's assertion that it was the court's wish that it not file a motion to remand. Nothing that Caldera points to provides evidence of this.

**Subject Matter Jurisdiction**

28 U.S.C. § 1338(a) provides that federal district courts have exclusive jurisdiction over actions "arising under any Act of Congress relating to patents." The Supreme Court set forth the test for determining whether a district court has jurisdiction pursuant to § 1338(a) in *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988). Jurisdiction extends to those cases "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson*, 486 U.S. at 808-09. If the well-pleaded complaint presents multiple theories supporting a claim, that claim "may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Id.* at 810.[2] If there are "reasons

---

[2] I reject Caldera's assertion that the Federal Circuit has gone against the clear holding in *Christianson*. The two cases LANS cites to – *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355 (Fed. Cir. 2010) and *Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C.*, 631 F.3d 1367 (Fed Cir. 2011) – do not support this assertion at all. As LANS rightly points out, the cases cited by Caldera merely stand for the proposition that a district court may exercise supplemental jurisdiction over related claims if one claim is indisputably patent in nature.

completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks . . . then the claim does not 'arise under' those laws." *Id.* The U.S. Supreme Court later rephrased the *Christianson* test as a determination of whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

Caldera brings four causes of action, all based on state law, against LANS and the Regents: (1) breach of contract; (2) fraud; (3) breach of implied covenant of good faith and fair dealing; and (4) fraudulent inducement. These causes of action all rest on the same three grounds: (1) the alleged abandonment of patent applications and failure to notify Caldera of the abandonment; (2) the alleged failure to file timely foreign patent applications; and (3) the disclosure of the licensed technology. The parties dispute whether each basis asserted by Caldera requires resolution of substantial questions of federal patent law.

Here, Caldera argues that it has multiple independent

8

theories for each claim which do not require resolution of any question of federal patent law.  Because I agree that the allegations concerning LANS's failure to file foreign patent applications, which underlay all of plaintiff's causes of action, do not require resolution of any question of U.S. federal patent law, this case must be remanded to state court.

Defendants' failure to make the necessary Patent Cooperation Treaty ("PCT") filings, and the subsequent concealment of that failure, is an independent ground supporting each of its four causes of action.  In its motion to remand, Caldera asserts that defendants' failure to file these PCT filings does not require resolution of any question of U.S. federal patent law.  Conversely, defendants argue that the issue of the foreign patent rights would, in fact, require analysis of U.S. patent law.

Caldera relies on *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355, 1360 (Fed. Cir. 2010), for its argument that because matters relating to the PCT involve issues of *foreign* patent law, resolution of such issues do not "arise under" federal patent law.  In *Davis*, an inventor brought an action against her attorney alleging he committed malpractice by failing to timely file a foreign patent application under the PCT.  In particular, the inventor alleged that her attorney

9

failed to file three PCT applications, and also negligently prepared and filed her U.S. patent application. 596 F.3d at 1359. In discussing the attorney's failure to file the foreign patent applications, the court noted that it was "undisputed" that the inventor's "allegations relating to the PCT application do not raise any issue of U.S. patent law." *Id*. at 1360. Caldera notes the similarities between *Davis* and this case, and argues that defendants' failure to file the PCT applications in this case also "do not raise any issue of U.S. patent law."

Having considered this case in light of Caldera's "well pleaded complaint," I conclude that defendants' failure to timely file foreign patent applications under the PCT does not raise a substantial question of U.S. patent laws. "[T]he fact that patent issues are relevant under state contract law to the resolution of a contract dispute "cannot possibly convert a suit for breach of contract into one 'arising under' the patent laws as required to render the jurisdiction of the district court based on section 1338." *Speedco, Inc. v. Estes*, 853 F.2d 909 (Fed. Cir. 1988) (quoting *Ballard Medical Products v. Wright*, 823 F.2d 527, 530 (Fed. Cir. 1987)); *Scheiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014 (7th Cir. 2002) ("[A] suit to enforce a patent licensing agreement does

10

not arise under federal patent law."). Resolving the state law claims based on this theory will require a court to resolve state law claims based on a contract in which patent issues are only peripherally implicated. While defendants point to every conceivable way in which the U.S. patent laws could possibly be implicated here, Caldera's claim, as presented in the complaint, is rather straightforward: defendants represented that they had secured certain foreign rights, Caldera relied on these representations, and Caldera was damaged when it turned out defendants had not secured the foreign patent rights. Many of the arguments made by defendants are based on arguments/issues not found in the complaint.[3] *See* Opp. at 20-21 (noting where there were disputed issues between the parties). While defendants argue that Caldera would have to prove that the foreign rights would have ultimately issued, that question itself does not raise a "substantial" question of U.S. patent law, focusing as it does

---

[3] Nor am I persuaded by defendants' attempt to focus the inquiry on their alleged failure to "timely" file the foreign patent applications by listing off the sections of federal patent law which determine whether a foreign patent application is, in fact, timely. The issue here is not whether an admitted filing was, or was not, timely. Rather, the issue is defendant's failure to file the foreign patent applications at all. To the extent a court would have to consult the U.S. patent laws on this issue, such an inquiry would only be secondary to the main state law issues.

on foreign law, with any questions concerning U.S. patent law secondary to the issues of foreign law. Further, Caldera has at least one theory of reliance damages which does not requires a showing that the patents would have actually issued.[4] *See* Complaint ¶¶ 76, 88, 102, 112.[5]

In addition, there are a number of additional reasons why this case should proceed in state court. First, any inquiry implicating patent law is specific to the facts of this case. Even if Caldera had to show that the foreign patents would have issued, a court's analysis will be based on a hypothetical situation with no precedential effect. Further,

---

[4] Given the fact that Caldera has at least one theory of damages which would not require it to prove that the patents would have actually issued, I reject LANS' reliance on *Landmark Screens, LLC v. Morgan, Lewis, Bockius, LLP*, __ F.3d __, 2012 WL 1382855 (Fed. Cir. Apr. 23, 2012) and *USPPA, Ltd. v. Avery Dennison Corp.*, __ F.3d. __, 2012 WL 1292886 (Fed. Cir. Apr. 17, 2012).

[5] Defendants provide a single sentence about *Helfgott & Karas, P.C. v. Dickenson*, 209 F.3d 1328, 1334-35 (Fed. Cir. 2000), which they claim stands for the proposition that "determinations made pursuant to the PCT confer jurisdiction under 1338(a)." Despite the fact that defendants failed to present any discussion or analysis of this case, I reviewed the case and find it factually distinguishable from the instant case. Unlike the distinct facts of this case, *Dickenson* involved claims against the Commissioner of the Patent and Trademark Office under the Administrative Procedure Act, wherein the inventor alleged that the PTO Commissioner "acted arbitrarily and capriciously" when he failed to allow certain errors to be corrected in a patent application. 209 F.3d at 1335.

such a ruling will not serve to cause an invention to be patented or strip a method or invention of its patent. Because the potential federal issues require only application of federal law to the specific facts of this case, the resolution of those issues will not be controlling in numerous other cases.

The final reason why jurisdiction cannot be predicated on § 1338 is the removal statute's strict presumption against removal. The removal statutes are "to be strictly construed against removal and all doubts should be resolved in favor or remand." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Despite defendants' suggestion that a state court judge could not handle the issues raised in this case, I disagree. It is well-settled that state courts may adjudicate patent law issues provided that they collaterally arise under a cause of action over which the state court has subject matter jurisdiction. *Pratt v. Paris Gas Light & Coke Co.*, 168 U.S. 255, 259 (1897). In addition, the resolution of tort and contract disputes have been traditionally under the purview of the state courts. If this court were to extend federal jurisdiction to matters which only tangentially implicate patent laws the traditional balance between federal and state jurisdiction would be disrupted.

In the end, because each of Caldera's causes of action can potentially be established by defendants' failure to secure foreign patent rights, each of Caldera's claims has an alternate theory that does not require a resolution of federal patent law. Thus, under *Christianson*, remand is appropriate in this matter.

Finally, I note that my decision to order remand in this case is consistent with the recent opinion of the California Appellate Court in *Caldera Pharmaceuticals, Inc. v. Regents of the University of California, et al.*, Case No. A129727, dated 4/24/12. In that case, which mirrors this one with respect to the parties and the legal theories involved, the appellate court reversed the lower court's ruling and concluded that there were no substantial issues of federal patent law in the dispute between Caldera and the Regents/LANS.

In conclusion, Caldera's motion to remand [70] is granted. LANS' request for further briefing is denied. All other pending motions [8, 18, 66] are denied as moot.

           **ENTER ORDER:**

          *[signature: Elaine E. Bucklo]*

          _____
          **Elaine E. Bucklo**
          United States District Judge

Dated:  May 11, 2012